Exhibit A

Electronically Filed
6/14/2018 4:53 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Timothy Lamb, Deputy Clerk

1  Walter H. Bithell, ISB: 1206
   BITHELL LAW
2  199 N Capitol Blvd, Suite 500
   Boise, ID 83702
3  Phone: (208) 336-4440
   Fax: (208) 344-7721
4  Email:  walter@bithelllaw.com

5

6  T.J. Angstman, ISB: 5738
   Kylie L. Madsen, ISB: 9911
7  ANGSTMAN JOHNSON
   3649 N. Lakeharbor Lane
8  Boise, Idaho 83703
   Phone: (208) 384-8588
9  Fax: (208) 853-0117
   Email:  tj@angstman.com
10 kylie@angstman.com

11

12 Attorneys for Plaintiffs

13            IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

14            OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

15

16 HONGBO SHAO, JIANRONG GUO,               Case No. CV01-18-01441
   WENWEI FAN, DONGHUI DENG,
17 GUANGFENG LUO, GANG SUN, YU              AMENDED COMPLAINT AND DEMAND
   ZHANG, HONG ZHANG, YIPING WU,           FOR JURY TRIAL
18 BEILIN HE, RUIZHE JIANG, WU LIU,
   DONGMEI HAN, WEI ZHANG, YANYAN
19 LI, BING LI, DONG SU, SHAOHUA SUN,
20 BO PENG, LIQIANG SUN, QI DENG, RUI
   HU, PING CHEN, XIA LI, JINGYUAN
21 ZHANG, HUA JIANG, JING JIANG,
22 JIAWEN JIANG, CHENGLONG JIANG, and
   YANLU LIU, individually and on behalf of a
23 class of other similarly-situated persons,

24
                      Plaintiffs,
25

26 v.

27

28 SEROFIM MUROFF; DEBRA L. RIDDLE;
29

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 1

RAYMOND KU; WINNER XING;
RICHARD K. GETTY; JERRY R.
BARNETT; BLACKHAWK MANAGER,
LLC; EQUITY RECAP ACCOUNT, LLC;
IDAHO STATE REGIONAL CENTER, LLC;
BLACKHAWK GOLD, LLC; IDAHO STATE
GOLD COMPANY, LLC; THE R.K. GETTY
CORPORATION; BLACKHAWK ON THE
RIVER, LLC D/B/A BLACKHAWK
MATERIAL SUPPLY; LEMHI GOLD
TRUST, LLC; THE MCCALL ASSOCIATES
LLC; RED RIDGE DEVELOPMENT LLC;
WESTLEAD CAPITAL INC. D/B/A
WESTLINK OR WEST LINK; WORLDWAY
GROUP; and DOES 1-10.

Defendants.

The Plaintiffs, individually and as the representative of a class of similarly-situated persons, allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Named Plaintiffs are Chinese citizens, who are qualified and appropriate representatives of a group of Blackhawk Gold, LLC investors who are similarly situated and have suffered harm in the same manner as Plaintiffs as a result of the actions and/or omissions of the Defendants.  No Plaintiff lives or resides in Idaho.

2.      Defendant Serofim (a.k.a. Sima) Muroff ("Muroff") is an Idaho resident, and is or was the Chief Executive Office of Blackhawk Manager, LLC and the Idaho State Regional Center, LLC, as well as the principal of Equity Recap Account, LLC, among other Defendant entities.

3.      Defendant Raymond Ku ("Ku") is a resident of China, who has and does conduct business with Muroff in the State of Idaho.

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 2**

4.     Defendant Winner Xing ("Xing") is a resident of China, who has and does conduct business with Muroff in the State of Idaho.

5.     Defendant Debra L. Riddle ("Riddle") is an Idaho resident with an address of 5195 West Elaynea Lane, Garden City, Idaho 83714.

6.     Defendant Richard K. Getty ("Getty") is a Washington resident with an address of 1145 Broadway, Suite 1300, Tacoma, Washington 98402.

7.     Defendant Jerry R. Barnett ("Barnett") is a Washington resident with an address of 8808 90th Avenue Northwest, Gig Harbor, Washington, 98332.

8.     Defendant Blackhawk Manager, LLC ("Blackhawk Manager") is an Idaho limited liability company with a registered address of 623 West Hayes Street, Boise, Idaho 83702.

9.     Defendant Equity Recap Account, LLC ("Equity Recap") is an Idaho limited liability company with a registered address of 132 Southwest 5th Avenue, Suite 150, Meridian, Idaho 83642.

10.     Defendant Idaho State Regional Center, LLC ("ISRC") is an Idaho limited liability company with a registered address of 1067 Arlington Drive, Eagle, Idaho 83616.

11.     Defendant Blackhawk Gold, LLC ("Blackhawk Gold") is an Idaho limited liability company with a registered address of 623 West Hayes Street, Boise, Idaho 83702.

12.     Defendant Idaho State Gold Company, LLC ("Idaho State Gold") is an Idaho limited liability company with a registered address of 623 West Hayes Street, Boise, Idaho 83702.

13.     Defendant The R.K. Getty Corporation ("R.K. Getty") is a Washington corporation with a registered address of 1145 Broadway Plaza #1300, Tacoma, Washington 98402.

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 3**

14. Defendant Blackhawk on the River, LLC d/b/a Blackhawk Material Supply ("Blackhawk on the River") is an Idaho limited liability company with a registered address of 623 West Hayes Street, Boise, Idaho 83702.

15. Defendant Lemhi Gold Trust, LLC ("Lemhi Gold") is an Idaho limited liability company with a registered address of 623 West Hayes Street, Boise, Idaho 83702.

16. Defendant The McCall Associates LLC ("McCall Associates") is an Idaho limited liability company with a registered address of 8919 West Ardene Street, Boise, Idaho 83709.

17. Defendant Red Ridge Development LLC ("Red Ridge") is an Idaho limited liability company with a registered address of 805 North 3rd Street, McCall, Idaho 83638.

18. West Mountain Sewer and Water Inc. d/b/a West Mountain Sewer and Water ("West Mountain") is an Idaho corporation with a registered address of 1112 West Main, Suite 101, Boise, Idaho 83702. West Mountain is a Doe Defendant.

19. Montana State Gold Company, LLC ("Montana State Gold") is a Montana limited liability company with a registered address of 201 West Main Street, Suite 201, Missoula, Montana 59802. Montana State Gold is a Doe Defendant.

20. West Mayflower Mining Company ("West Mayflower") is a Montana corporation with a registered address of 201 West Main Street, Suite 201, Missoula, Montana 59802. West Mayflower is a Doe Defendant.

21. Mayflower Mining Company ("Mayflower") is a Montana corporation with a registered address of 201 West Main Street, Suite 201, Missoula, Montana 59802. Mayflower is a Doe Defendant.

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 4**

22.    Concierge Holdings, LLC ("Concierge") is an Idaho limited liability company with an address of 1112 West Main, Suite 105, Boise, Idaho 83702.    Concierge is a Doe Defendant.

23.    Collectively, Defendants Lemhi Gold, McCall Associates, Red Ridge, Montana State Gold, West Mayflower, Mayflower, and Concierge are hereinafter sometimes referred to as the "Investment Entities."

24.    Defendant Westlead Capital Inc. d/b/a Westlink or West Link ("Westlead") is a Chinese corporation which did and does business with Muroff in the State of Idaho.

25.    Defendant Worldway Group ("Worldway") is a Chinese entity which did and does business with Muroff in the State of Idaho.

26.    Defendant Does 1-10 are individuals or entities who may also have committed the harms alleged herein.    The exact identity of these parties is presently unknown.    At such time as Plaintiffs become aware of the identities of these parties (if any), Plaintiffs will amend this Amended Complaint to name those additional parties.

27.    Jurisdiction is proper in this Court pursuant to Idaho Code Sections 5-514(a)-(b) because Defendants have transacted business and/or committed tortious acts within the State of Idaho.

28.    Venue is proper pursuant to Idaho Code Section 5-404.    Defendants either reside in this County or maintain a principal place of business in this county.    Additionally, the causes of action arose in this County.

//

//

//

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 5**

## CLASS ACTION ALLEGATIONS

29.     The named Plaintiffs bring this action on their own behalf and as representatives of all persons who invested in Defendants' fraudulent scheme involving the EB-5 Immigrant Investor Program.

30.     Class certification is sought pursuant to Idaho Rule of Civil Procedure 77(c).

31.     Class certification is appropriate because: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law and fact common to the class; (iii) the claims of the representative parties are typical of the claims of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class.

32.     Additionally, the class should be maintained because prosecuting separate actions by individual class members would create a risk of: (i) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (ii) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

33.     Finally, there are questions of law or fact common to the class that predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## STATEMENT OF FACTS

34.     During 2004 through 2008, Muroff, Getty, and Barnett formed various Idaho companies for the purposes of real estate development and investment.

35.     Muroff, Getty, and Barnett invested heavily in Valley County, Idaho, which saw a dramatic downturn in the real estate market following the 2008 recession.

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 6**

36.     In 2009, Muroff and/or his affiliates formed ISRC to secure funds with which to replace their own failing investments, to realize a personal profit, and/or engage in other fraudulent activities (the "Investment Scheme").

37.     To effectuate the Investment Scheme, in 2010, Muroff and/or his affiliates formed Blackhawk Gold.

38.     Blackhawk Manager was the Managing Member of Blackhawk Gold.

39.     Muroff served as the Manager of Blackhawk Manager.

40.     Blackhawk Gold was formed to serve as the investment vehicle by which ISRC would execute Phase 1 of an EB-5 Immigrant Investor Program ("EB-5 Program") to obtain foreign investments.

41.     The EB-5 Program is administered by the U.S. Citizenship and Immigration Services, and provides non-United States citizens the opportunity to apply for a green card if they (i) make a qualified investment in a commercial enterprise in the U.S., and (ii) plan to create or preserve ten permanent full-time jobs for qualified U.S. workers.

42.     To perpetuate the Investment Scheme, Muroff traveled to China on various occasions to make presentations to potential investors regarding the EB-5 Program.

43.     Muroff, Ku, Xing, Westlead, Worldway, Blackhawk Gold, ISRC, Blackhawk Manager, and/or their agent(s) and affiliates (the "Investment Promoters") solicited potential investors to place their money in Blackhawk Gold, to be invested by Muroff, Getty, Barnett and/or their agents and affiliates in their various business entities, which included certain failing business entities.

44.     Ku, Westlead, Xing, Westlead, and Worldway are immigration investment brokers in Asia.

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 7**

45.     By agreement among them, and in support of the Investment Scheme, the Investment Promoters solicited and identified wealthy Chinese investors (the "Investors") looking to participate in the EB-5 Program and directed the Investors to ISRC and Blackhawk Gold over other investment opportunities.

46.     In exchange, Ku, Xing, Westlead, and Worldway received commissions that were undisclosed to the Investors.

47.     To enhance the appeal of investing with Muroff, Getty, Barnett, and their entities, the Investment Promoters represented to the Investors that Barnett, Getty, R.K. Getty, and Blackhawk Manager and its agents and/or affiliated entities ("Blackhawk Affiliates") were world-class experts with a successful track record in similar projects.

48.     For example, the Investment Promoters promoted Getty and Barnett's projects as being valued near one trillion dollars at a time when many of their business interests were failing.

49.     On July 20, 2010, without notice to actual and potential Investors, Getty and Barnett filed for bankruptcy.  The allegations set forth herein regarding Getty and Barnett relate to their actions after July 20, 2010.

50.     The Blackhawk Affiliates actively participated in the Investment Scheme.

51.     The Investment Promoters promised and convinced the potential investors their investments would be used in real estate investment and gold mining in Idaho through Blackhawk Gold, as well as to potentially acquire interests in companies associated with Muroff, Getty, and Barnett.

//

//

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 8**

52.     The Investment Promoters used other artifice and deception to persuade the potential investors the project was "zero risk," and although insurance was available, it was unnecessary.

53.     The Investment Scheme included actual and implied representations intended to persuade potential Investors that the promoted EB-5 investment was directly supported by the Idaho State government.

54.     Muroff and/or his agents and affiliates dispersed to actual and potential Investors a Confidential Private Placement Memorandum ("PPM") for Blackhawk Gold.   A true and correct copy of the PPM is attached hereto as **Exhibit A** and incorporated herein by reference.

55.     Pursuant to the express terms of the PPM, distributions of cash flow (i.e. net cash available from operational profits according to standard accounting methods, less any reserves established by the Managing Member for operational purposes) would be distributed to the Investors until they had received the fair market value of their contributions.

56.     The PPM also provides, in pertinent part, as follows:

a)      The Investor would pay his investment directly to an escrow account ("Escrow Account") held by U.S. Bank National Association, as "Escrow Agent," pursuant to an Escrow Agreement.   A true and correct copy of the Escrow Agreement is attached hereto as **Exhibit B** and incorporated herein by reference.

b)      Upon payment of the investment into the Escrow Account, the Investor could not revoke or request a refund of his investment.

c)      The Investor's investment would only be released from the Escrow Account to Blackhawk Gold if the Investor's EB-5 Petition was approved by the U.S. Citizenship and Immigration Services ("USCIS").

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 9**

d)      If the Investor's EB-5 Petition was denied by USCIS, all the Investor's investment would be returned to the Investor.

e)      Additionally, if 18 months passed after submission of the Investor's EB-5 Petition and USCIS had not made a determination regarding the Petition, all the Investor's investment would be returned to the Investor.

57.      The PPM also provides the following representations:

a)      Muroff "has limited experience in the gold and silver mining business, but has retained world-class experts with a successful track record to assist in the development and operation of such business."

b)      The investment offering was "structured so that investors may meet the investment requirements of the EB-5 program . . . and qualify under this program to become eligible for the admission to the United States of America as lawful permanent residents with their spouses and unmarried, minor children."

58.      As part of the PPM and the Investment Scheme, Muroff and/or his agents and affiliates attached to the PPM an Operating Agreement of Blackhawk Gold, LLC ("Operating Agreement"), which had been allegedly filed with USCIS.   A true and correct copy of the Operating Agreement is attached hereto as **Exhibit C** and incorporated herein by reference.

59.      Pursuant to the Operating Agreement, the Investors were entitled to receive their allocable portion of Interest Payments, which amount was to be payable on a quarter-annual basis.

60.      Pursuant to the Operating Agreement and the PPM, the Managing Member would be liable for harm arising from fraud, bad faith, gross negligence, malfeasance, or a material

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 10**

failure to comply with any representation, warranty, covenant, condition, or other agreement contained in the Operating Agreement.

61.    To accept the terms of the PPM and Operating Agreement, the Investors were required to execute a Member Interest Subscription Agreement ("Subscription Agreement"), acknowledging therein the terms of the PPM, Operating Agreement, and Escrow Agreement. A true and correct copy of the Subscription Agreement is attached hereto as **Exhibit D** and incorporated herein by reference.

62.    In pursuit of the Investment Scheme, Defendants sold to the Investors 120 units in Blackhawk Gold at $500,000 per unit.  The purchasers are approximately 120 Investors, including Plaintiffs.

63.    Plaintiffs each wired $500,000 per unit to the Escrow Account pursuant to the terms of the PPM.

64.    Plaintiffs each wired approximately $35,000 to a Westlead or Worldway bank account for an "issuance" or "administration fee."

65.    The Investment Promoters promised Plaintiffs their money would be invested in lucrative real estate development and gold mining ventures; instead, as part of the Investment Scheme, Defendants Muroff, Blackhawk Gold, Blackhawk Manager, Equity Recap, Riddle, Getty, Barnett, and others used Plaintiffs' investments to acquire assets they knew were overvalued and could never realize a profit.

66.    Plaintiffs have not received distributions from Blackhawk Gold.

67.    To date, few Plaintiffs have received permanent green cards.

68.    The Investment Entities were formed as part of the Investment Scheme to receive fraudulent transfers of Plaintiffs' investments.

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 11**

69.     Defendants fraudulently misappropriated and misused Plaintiffs' investments as part of the Investment Scheme by engaging in other various acts, which include, without limitation, the following:

a)  use of Plaintiffs' money in Blackhawk Gold for personal purposes;

b)  Muroff's use of Plaintiffs' money in Blackhawk Gold to purchase assets in his own companies, then selling the interests back to investors at higher prices;

c)  diverting Plaintiffs' funds into options which resulted in significant losses which were not disclosed to Plaintiffs;

d)  purchasing real estate with Plaintiffs' funds but titling the property in an entity's name not associated with Plaintiffs' securities interests;

e)  submitting false and misleading purchase agreements to Plaintiffs indicating Blackhawk Gold purchased a real estate development, when in fact it had been purchased by Muroff; and

f)  use of Plaintiffs' funds to pay additional, undisclosed commissions to Ku, Westlead, Xing, and Worldway for soliciting potential Chinese investors to invest in the EB-5 Program scheme.

70.     Additionally, Defendants made intentional misrepresentations to Plaintiffs as part of the Investment Scheme, which include, without limitation, the following:

a)  their investments would be used for the specific purposes of the EB-5 Program, which would result in the issuance of permanent green cards without conditions;

b)  their investments would result in the fair market value of their investment, either monetarily or in gold;

c)  the investments were "zero risk" and therefore did not require insurance; and

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 12**

d) the entities and individuals investing the money were successful and sophisticated business professionals, who would properly handle and invest Plaintiffs' money.

## COUNT I – BREACH OF FIDUCIARY DUTY
### As to the Investment Promoters

71.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

72.     At all relevant times, Defendants were investment advisers to, and agents of, Plaintiffs.

73.     As investment advisers and agents, Defendants owed to Plaintiffs a fiduciary duty. *See* Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006).

74.     Defendants' fiduciary duties also arise from Section 206 of the Investment Advisers Act of 1940 ("Advisers Act"), which prohibits investment advisers from engaging in any practice that is fraudulent, deceptive, or manipulative. *See* 15 U.S.C. §§ 80b-6(1), 80b-6(20, 80b-6(4); *see also SEC v. Capital Gains Research Bureau*, 375 U.S. 180 (1963) (holding that the Advisers Act evidences Congress' acknowledgment "of the delicate fiduciary nature of an investment advisory relationship").

75.     By engaging in the fraudulent conduct and misrepresentations set forth herein, Defendants, separately and together, knowingly or recklessly violated their fiduciary duties owed to the Plaintiffs.

76.     As a direct result of Defendants' breach, Plaintiffs have suffered damages in excess of $10,000 for which they are entitled to recover in an amount to be proven at trial.

//

//

//

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 13**

## COUNT II – BREACH OF CONTRACT
*As to Blackhawk Gold, Idaho State Gold, Blackhawk Manager, and R.K. Getty*

77.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

78.     The PPM, Subscription Agreement, Escrow Agreement, and Operating Agreement are valid contracts ("Blackhawk Contracts").

79.     By engaging in the Investment Scheme, Defendants breached some or all of the Blackhawk Contracts, as follows:

    a) by improperly causing Plaintiffs' investments to be released from the Escrow Agreement;

    b) by failing and/or refusing to release Plaintiffs' investments back to Plaintiffs in accordance with the Blackhawk Contracts;

    c) by failing and/or refusing to invest Plaintiffs' investments in accordance with the Blackhawk Contracts; and

    d) by failing and/or refusing to pay distributions to Plaintiffs in accordance with the Blackhawk Contracts.

80.     As a result of Defendants' breach of some or all the Blackhawk Contracts, Plaintiffs have suffered damages in excess of $10,000 for which they are entitled to recover in an amount to be proven at trial.

## COUNT III – VIOLATION OF THE UNIFORM VOIDABLE TRANSACTION ACT
*As to Muroff, Riddle, Getty, Barnett, Blackhawk Manager, Equity Recap, ISRC, Blackhawk Gold, Idaho State Gold, and the Investment Entities*

81.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 14**

82.     At all relevant times, Plaintiffs are and were creditors of Blackhawk Gold and/or its affiliates.

83.     Plaintiffs were innocent investors who gave their money to Defendants believing the money would be invested profitably and for the EB-5 Program on their behalf.

84.     Defendants fraudulently transferred assets including funds contributed by Plaintiffs and membership interests in Blackhawk Gold and/or affiliated entities, with the actual intent to hinder, delay, or defraud creditors, including Plaintiffs.

85.     For example, Defendants transferred funds to acquire assets for the Investment Entities and/or other entities and then "sold" the interests they acquired back to Plaintiffs at a higher price.

86.     Additionally, to make a personal profit, Muroff funneled funds through Equity Recap to acquire real estate, but titled the property in the name of an entity owned by his associate, rather than in Blackhawk Gold.

87.     Defendants made the transfers without receiving reasonably equivalent value in exchange, when Defendants were insolvent or had become insolvent as a result of the transfers.

88.     Accordingly, the transfers are avoidable fraudulent transfers pursuant to Idaho Code Sections 55-913(1)(a)-(b) and 55-914(1), and Plaintiffs are entitled to recover the amounts transferred from Defendants.

### COUNT IV – FRAUD
#### As to the Investment Promoters

89.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

90.     Defendants made intentional misrepresentations to Plaintiffs as part of the Investment Scheme, which include, without limitation, the following:

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 15**

e)   their investments would be used for the specific purposes of the EB-5 Program, which would result in the issuance of permanent green cards without conditions;

f)   their investments would result in the fair market value of their investment, either monetarily or in gold;

g)   the investments were "zero risk" and therefore did not require insurance; and

h)   the entities and individuals investing the money were successful and sophisticated business professionals, who would properly handle and invest Plaintiffs' money.

91.   The statements and/or misrepresentations of fact are false and material.

92.   Defendants made these statements and/or misrepresentations of fact knowing of their falsity.

93.   Defendants made these statements and/or misrepresentations of fact intending Plaintiffs rely on them.

94.   Plaintiffs were ignorant of the falsity of the statements and/or misrepresentations of fact.

95.   Plaintiffs justifiably relied on the statements and/or misrepresentations of fact.

96.   Plaintiffs were injured because of their justifiable reliance on Defendants' statements and/or misrepresentations of fact.

97.   Accordingly, Plaintiffs have suffered damages in excess of $10,000 for which they are entitled to recover in an amount to be proven at trial.

## COUNT V – SECURITIES FRAUD
### As to the Investment Promoters

98.   Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 16**

99.   Pursuant to Idaho Code Section 30-14-509, "a person is liable to the purchaser if the person sells a security in violation of section 30-14-301, Idaho Code, or, by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading, the purchaser not knowing the untruth or omission and the seller not sustaining the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission." I.C. § 30-14-509 (b).

100.   Additionally, a "person that receives directly or indirectly any consideration for providing investment advice to another person and that employs a device, scheme or artifice to defraud the other person or engages in an act, practice, or course of business that operates or would operate as a fraud or deceit on the other person, is liable to the other person." I.C. § 30-14-509 (f).

101.   To induce Plaintiffs to invest their money for Defendants' fraudulent purposes, Defendants made numerous untrue statements of material fact and/or omissions as set forth herein.

102.   Defendants received consideration for providing investment advice to Plaintiffs to engage in the fraudulent and deceitful acts, practices, and course of business as set forth herein.

103.   As a result of Defendants' fraudulent conduct, Plaintiffs are entitled to recover their investments, or actual damages as set forth in I.C. § 30-14-509 (b)(3), plus interest, costs, and attorney fees.

//

//

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 17**

## COUNT VI – ACCOUNTING
### As to Blackhawk Gold and Any and All of its Affiliates

104.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

105.    Pursuant to the express terms of the Operating Agreement, Plaintiffs are entitled to inspect and copy Blackhawk Gold's financial records and books of account. *See* Ex. C § 16.1.

106.    Because of Defendants' misappropriation and misuse of Plaintiffs' investments, Plaintiffs have not received a full, complete, and accurate accounting from Blackhawk Gold.

107.    Accordingly, Plaintiffs demand and are entitled to the equitable remedy of accounting.

## COUNT VII – VIOLATION OF THE IDAHO RACKETEERING ACT
### As to All Defendants

108.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

109.    Under the Idaho Racketeering Act, "[a] person who sustains injury to his person, business or property by a pattern of racketeering activity may file an action in the district court for the recovery of three (3) times the actual damages proved and the cost of the suit, including reasonable attorney's fees." I.C. § 18-7805(a).

110.    A "pattern of racketeering activity" means:

engaging in at least two (2) incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one (1) of such incidents occurred after the effective date of this act and that the last of such incidents occurred within five (5) years after a prior incident of racketeering conduct.

I.C. § 18-7805 (d).

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 18**

111.   "Incidents of racketeering conduct" include: engaging in (i) "fraudulent practices, false pretenses, insurance fraud, financial transaction card crimes and fraud generally;" (ii) securities fraud; and (iii) theft and related crimes. *See* I.C. § 18-7803 (2), (10), (13).

112.   As set forth herein, to effectuate the Investment Scheme, Defendants engaged in numerous incidents of racketeering ("Incidents of Racketeering"), which include, without limitation, fraud, securities fraud, and/or theft and related crimes, as follows:

   a) fraudulently misrepresenting that Plaintiffs' investments would be used for the specific purposes of the EB-5 Program, which would result in the issuance of green cards;

   b) fraudulently misrepresenting that Plaintiffs' investments would result in substantial gains, either monetarily or in gold;

   c) fraudulently misrepresenting to Plaintiffs that the investments were "zero risk" and therefore did not require insurance;

   d) fraudulently misrepresenting to Plaintiffs that they did not need to consult with an attorney regarding their investments;

   e) fraudulently misrepresenting to Plaintiffs that the investors were successful and sophisticated business professionals, who would properly handle and invest the Plaintiffs' money;

   f) improperly and/or fraudulently using investor money in Blackhawk Gold for personal purposes;

   g) Muroff's improper and/or fraudulent use of Plaintiffs' money in Blackhawk Gold to purchase assets in his own companies, then selling the interests back to Plaintiffs at higher prices;

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 19**

h) diverting Plaintiffs' funds into options which resulted in significant losses which were not disclosed to Plaintiff;

i) purchasing real estate with Plaintiffs' funds but titling the property in an entity's name not associated with Plaintiffs' securities interests;

j) submitting false and misleading purchase agreements to Plaintiffs indicating Blackhawk Gold purchased a real estate development, when in fact it had been purchased by Muroff; and

k) using investor funds to pay additional, undisclosed commissions to Ku, Westlead, Xing, and Worldway for soliciting potential Chinese investors to invest in the EB-5 Program scheme.

113.   The Incidents of Racketeering are continuous and related behavior that amount to, or pose a threat of, continued criminal violations.

114.   Plaintiffs have sustained damages as a direct result of Defendants' pattern of racketeering activity.

115.   As a result of Defendants' conduct, Plaintiffs are entitled to recover three (3) times the actual damages proved as set forth in I.C. § 18-7805, plus interest, costs, and attorney fees. I.C. § 18-7805(a).

**REQUEST FOR ATTORNEYS' FEES**

116.   Plaintiffs have been required to retain the services of counsel to prosecute this matter on their behalf, and is entitled to reasonable attorneys' fees for prosecution of this action, pursuant to applicable law, including, but not limited to, Idaho Code §§ 12-120(3) and 12-121, and Rule 54 of the Idaho Rules of Civil Procedure, in such sums as the Court may deem just and equitable.

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 20**

**PUNITIVE DAMAGES**

117.    Under I.C. § 6-1604, a claim for punitive damages requires proof, by clear and convincing evidence, that the Defendants engaged in oppressive, fraudulent, malicious, and/or outrageous conduct.  A Plaintiff, however, may not seek punitive damages at the outset, but may, after a motion and hearing before the Court, amend the pleadings to include a claim for punitive damages.  Plaintiffs hereby reserve their right to amend their pleadings to include a claim for punitive damages after further investigation and discovery if the facts and circumstances warrant such a claim.

**DEMAND FOR JURY TRIAL**

118.    Plaintiffs hereby demand a trial of no less than 12 persons.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.    On Count 1 (Breach of Fiduciary Duty), for a money judgment against Defendants in an amount, in excess of $10,000, to be proven at trial;

2.    On Count 2 (Breach of Contract), for a money judgment against Defendants in an amount, in excess of $10,000, to be proven at trial;

3.    On Count 3 (Fraudulent Transfers), for a judgment avoiding the fraudulent transfers pursuant to Idaho Code Sections 55-913(1)(a)-(b) and 55-914(1);

4.    On Count 4 (Fraud), for a money judgment against Defendants in an amount, in excess of $10,000, to be proven at trial;

5.    On Count 5 (Securities Fraud), for a judgment awarding to Plaintiffs the recovery of their investments, or actual damages as set forth in I.C. § 30-14-509 (b)(3), plus interest, costs, and attorney fees;

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 21

6.     On Count 6 (Accounting), for a judgment ordering Defendants submit an accounting, which makes available all information relating to Plaintiffs' investments;

7.     On Count 7 (Racketeering Act), for a judgment awarding to Plaintiffs recovery of three (3) times the actual damages proved as set forth in I.C. § 18-7805, plus interest, costs, and attorney fees; and

8.     For all Counts:

a.     Reasonable attorney fees in the sum of not less than $5,000.00 pursuant to Idaho Code §§ 12-120(3) and 12-121, and Rule 54, if uncontested. If contested, the amount of attorney fees and Court costs should be the actual attorney fees and court Costs;

b.     Interest as allowed by law; and

c.     For such other and further relief as the Court may deem just and equitable.

RESPECTFULLY SUBMITTED this 14[h] day of June, 2018.

BITHELL LAW PLLC

_/s/ Walter H. Bithell_____
Walter H. Bithell, Of the Firm
Attorneys for Plaintiffs

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 22**